1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
    Case No. 20-cv-02591-NRN
 3  _____

 4  SHAPESHIFT US, INC., a foreign corporation,

 5      Plaintiff,

 6  vs.

 7  AZAMAT MUKHIDDINOV, an individual,

 8      Defendant.
    _____
 9

10           Proceedings before N. REID NEUREITER, United

11  States Magistrate Judge, United States District Court for

12  the District of Colorado, commencing at 2:30 p.m., November

13  13, 2020,in the United States Courthouse, Denver, Colorado.

14  _____

15           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                           APPEARANCES

19           DAVID ROTH and MICHAEL GRECO, Attorneys at Law,

20  appearing for the Plaintiff.

21           KENNETH EICHNER and LYNN HARTFIELD,

22  Attorneys at Law, appearing for the Defendant.

23  _____

24                    TELEPHONIC MOTION HEARING

25
```

1            P R O C E E D I N G S

2        (Whereupon, the within electronically recorded

3  proceedings are herein transcribed, pursuant to order of

4  counsel.)

5        THE COURT:  Okay.  This is Magistrate Judge Reid

6  Neureiter.  I'm calling the matter of -- it's Case Number

7  20-cv-02591, ShapeShift US, Inc., vs. Azamat -- and I'm --

8  I'd like for someone to school me on the pronunciation of

9  the defendant's name.  I don't want to mispronounce it.

10       MR. EICHNER:  Mukhiddinov.

11       THE COURT:  Mr. Mukhiddinov.

12       So this is a case -- could I have appearances for

13  the plaintiff, please.

14       MR. ROTH:  David Roth, Your Honor, on behalf of

15  plaintiff, ShapeShift US.  With me is my colleague, Michael

16  Greco.

17       THE COURT:  Thank you.  And for the defendant?

18       MR. EICHNER:  Good afternoon, Your Honor.  Kenneth

19  Eichner of the Eichner Law Firm, with my co-counsel, Lynn

20  Hartfield.

21       THE COURT:  And Mr. Mukhiddinov is also on the

22  line; is that correct?

23       MR. ROTH:  Yes.

24       THE COURT:  And the record should reflect that I

25  do think there's some other interested parties who've

1  announced their presence here, members of the public who are
2  other interested parties.
3          And you're welcome to introduce yourselves if you
4  want to.  You're not required to, but I do know there are
5  some other people on the line.
6          MR. VOLOKH:  Sure.  Eugene Volokh.  I'm here and
7  my role is media and a member of the public.  I've written
8  (inaudible) about this motion to seal this case and I'm
9  interested in hearing what happens.
10         THE COURT:  Okay, thank you.  Anybody else?
11 Members of the media?  Anybody else who'd like to announce
12 their presence?
13         Okay.  We are here because there was a motion -- a
14 joint motion for leave to restrict by the defendant and the
15 plaintiff.  I heard argument on the motion on November 10th.
16 It was pointed out to the parties that they -- they both
17 orally consented to the jurisdiction of the magistrate judge
18 on -- during those -- that proceeding, but to comply with
19 our Local Rules, I asked that they formally consent in
20 writing.  And that form was submitted on the 11th of
21 November and Judge -- Chief Judge Brimmer then completed the
22 formalities by issuing an Order of Reference.
23         So I have -- having heard the arguments of the
24 parties, reviewed the motion, I'm going to announce my
25 ruling.

1          The matter comes before the Court on the parties'
2  joint motion to restrict public access to the complaint.
3  There is no opposition.
4          The complaint was filed on August 26th, 2020.
5  Counsel has entered an appearance for defendant, Mr.
6  Mukhiddinov, on September 9th, 2020.  The matter was settled
7  between the parties shortly thereafter and a stipulation of
8  dismissal with prejudice was filed on October 19th, 2020.
9          Simultaneous with the filing of the stipulation of
10 dismissal is the filing of the instant joint motion for
11 leave to restrict.  Given the timing, I presume that the
12 filing of a joint motion was part of the settlement
13 agreement between the parties.
14         The parties have consented to my jurisdiction for
15 purposes of resolving the joint motion to restrict
16 consistent with our Local Rules.  The case was referred to
17 me by Judge Brimmer for all purposes pursuant to 28 USC
18 Section 636(c).
19         The parties seek to restrict from public access a
20 complaint filed by ShapeShift against Mr. Mukhiddinov under
21 the Federal Computer Fraud and Abuse Act, 18 USC Section
22 1030.  The complaint alleges one count of computer fraud and
23 abuse and a second claim, under state law, for breach of the
24 duty of loyalty.
25         Generally, the complaint alleges that Mr.

1  Mukhiddinov, while working as an employee of ShapeShift,
2  responsibility for finding and repairing weaknesses within
3  their -- the company's computer network and maintaining the
4  integrity of ShapeShift's computing systems, intentionally
5  and without authorization:
6          Number one, installed a program on ShapeShift's
7  computers for the purpose of maliciously stealing
8  approximately $900,000 worth of Bitcoin and defrauding the
9  company of its assets and property.
10         Number two, damaging the company's computer
11 infrastructure, which resulted in the cost to investigate
12 and remediate the damage.
13         And number three, causing a loss of business,
14 goodwill and profits.
15         Once his misconduct was discovered, Mr.
16 Mukhiddinov apparently saw the error of his ways and agreed
17 to return the full value of the Bitcoin that was stolen, but
18 he had apparently already spent some of the Bitcoin.  So
19 some amount of the stolen property needed to be repaid in
20 cash or in the form of some other cryptocurrencies.
21         Mr. Mukhiddinov repaid more than $100,000 in cash
22 or electronic transfers and, in one form or another, Mr.
23 Mukhiddinov returned the equivalent of all $900,000.
24         Unfortunately, ShapeShift suffered damages beyond
25 the $900,000 in lost Bitcoin.  Extensive efforts were

1   required by ShapeShift to remediate the damage done to its
2   computer infrastructure.  Overtime was paid to the
3   employees, code had to be rewritten to repair and secure the
4   company's software.
5           This mobilization allegedly resulted in business
6   disruptions and lost profits.  Launch of the mobile app was
7   delayed because of reallocated engineering resources and
8   ShapeShift's most important project was delayed for two
9   months.
10          ShapeShift's systems, network and infrastructure
11  had to be migrated to a new digital environment, resulting
12  in serious outages and had a detrimental effect on
13  ShapeShift's ability to focus in carrying on its business
14  operations.
15          So beyond the $900,000 in lost Bitcoin, which was
16  repaid relatively promptly, ShapeShift's complaint alleges
17  that it incurred damages totaling tens of thousands of
18  dollars, if not more, as a result of Mr. Mukhiddinov's
19  illegal actions.
20          Apparently, before the filing of the lawsuit, the
21  issue of the additional damages suffered by ShapeShift could
22  not be resolved between the company and Mr. Mukhiddinov,
23  prompting the filing of the public document, the hiring of
24  counsel by Mr. Mukhiddinov, the resolution of the dispute,
25  the stipulation of dismissal, and the joint request to seal

1   the complaint from public view.
2           For his part, Mr. Mukhiddinov, understandably,
3   would like the allegations of his misconduct placed under
4   wraps.  He's young, only 25 years old.  He has lost one
5   potential job already because the allegations contained in
6   the complaint became known to his prospective employer.
7           ShapeShift, too, would like its complaint placed
8   under seal, because it is in ShapeShift's interest that Mr.
9   Mukhiddinov be gainfully employed so that he can generate
10  the income needed to reimburse ShapeShift for the
11  remediation damages it has suffered.
12          Because the motion is a joint motion, no one is
13  here representing the public's interest in open court
14  proceedings.  The complaint was filed publically.  It
15  contains serious and credible allegations of a sophisticated
16  theft of property worth nearly a million dollars by a
17  trusted employee.  The parties are asking the Court to be
18  complicit in concealing these allegations from the public so
19  that the alleged thief can obtain employment with a new
20  employer, presumably without disclosing this serious and
21  arguably criminal activity.
22          Importantly, no one before the Court is saying
23  that the detailed allegations are wrong or incorrect.
24  Having made the allegations public and used the court system
25  to leverage a settlement with the defendant, the plaintiff

1    would like the allegations made secret for its own selfish

2    purposes, so that its ex-employee can get a job with a new

3    company and repay ShapeShift for the debt Mr. Mukhiddinov

4    presumably owns.

5            In 1884, Oliver Wendell Holmes, then a justice on

6    the Massachusetts Supreme Court, held in Cowley vs.

7    Pulsifer, (137 Mass. 392) that members of the public enjoy a

8    right of access to civil trials.  This right, he said, was

9    rooted in democratic principles.  Quote:  It is desirable

10   that the trial of civil causes should take place under the

11   public eye ... not because the controversies of one citizen

12   with another are of public concern, but because it is of the

13   highest moment that those who administer justice should

14   always act under the sense of public responsibility, and

15   that every citizen should be able to satisfy himself with

16   his own eyes as to the mode in which a public duty was

17   performed, end quote.

18           This Court's Local Rule 7.2(c) provides that a

19   Court may restrict from public access and inspection any

20   document in a case and circumstances in which the public

21   right of access is outweighed by the potential for serious

22   injury if access is not restricted.

23           In the discovery context, where information is

24   merely exchanged between the parties and not submitted to

25   the Court for purposes of resolving a disputed issue,

1    protective orders ensure the exchange of information, while
2    protecting privacy, commercial secrets or other sensitive
3    information.  See:  Seattle Times v. Rhinehart, 467 U.S. 20
4    (1984), but a publically filed complaint is not a discovery
5    document.  It is a legal request for judicial assistance
6    from the Court in righting an alleged wrong.  It is
7    presumptively open to the public.
8              Defendant argues that this case is unique and that
9    many of the damages arising from Mr. Mukhiddinov's conduct
10   had already been resolved prior to the complaint even being
11   filed.  Thus, the allegations of theft are immaterial to the
12   actual complaint that was filed.  And the Federal Rules of
13   Civil Procedure do have a procedure under Rule 12(f) whereby
14   documents or portions of documents may be stricken by -- may
15   be stricken where there is, quote, redundant, immaterial,
16   impertinent or scandalous matter included.
17             Plaintiff relies on a decision by my colleague,
18   Judge Tafoya, McPherson vs. Bachus & Shanker, 2011 WestLaw
19   2415003, June 10th, 2011, which was a Fair Labor Standards
20   Act case against the law firm that included many extraneous
21   and prejudicial details about the law firm and the hostile
22   and abusive work environment there that were not necessary
23   to the resolution of the wage in our claims, but under Rule
24   12(f), quote, allegations will not be stricken as immaterial
25   unless they have no possible bearing on the controversy.

1    Even where the challenged allegations fall within
2    the categories set forth on the Rule, a party must usually
3    make a showing of prejudice before the Court will grant a
4    motion to strike.  The relevant allegations will be stricken
5    as scandalous only if they degrade defendant's moral
6    character, contain repulsive language, or detract from the
7    dignity of the Court.  End quote.
8    Judge Tafoya found that the allegations of assault
9    or abuse of employees, gender discrimination and
10   questionable business practices were irrelevant and
11   scandalous to the Bachus & Shanker FLSA suit, because they
12   unnecessarily cast the defendants as abusive employers and
13   supervisors and were not relevant to the FLSA claims in that
14   case.  So she ordered those particular paragraphs stricken
15   from the complaint.
16   I do not find the Bachus & Shanker case as
17   persuasive in this situation.  The allegations regarding
18   theft and computer fraud and abuse by Mr. Mukhiddinov are
19   (inaudible) to the overall complaint here.  The allegations
20   do paint Mr. Mukhiddinov in a bad light, but they are not of
21   the nature of the allegations that are scandalous,
22   immaterial, or impertinent within the meaning of Rule 12(f).
23   Plaintiff also relies on the fact that Colorado
24   State law provides for the sealing of criminal charges where
25   there's been a disposition and the defendant keeps his

1  record clean for a period of time.

2  But federal court is not state court, this is a
3  civil proceeding, not a criminal one, and while the Colorado
4  Legislature, in its wisdom, has provided a mechanism for the
5  sealing of criminal proceedings to protect the future
6  reputations of charged criminal defendants, Congress has
7  provided no such mechanism to erase from the court record or
8  the public access to court record allegations filed in civil
9  cases.  And in the criminal context, there is at least a
10 probationary period where a criminal defendant can prove he
11 has corrected his or her ways, kept his or her nose clean
12 for a period of time.  In the civil context, no such
13 follow-up supervision or probation exists.

14 Mr. Mukhiddinov wants to go to a new employer and
15 not disclose the serious allegations raised against him at
16 his former job at ShapeShift.  This Court cannot be a party
17 for -- to such a deception.  If the new employer does the
18 legwork of a background check and learns of this lawsuit,
19 then Mr. Mukhiddinov will have to explain himself.  In fact,
20 it might be a good idea for him to preemptively disclose
21 what happened and give the best explanation he can, but this
22 Federal Court will not be party to keeping secret these
23 allegations.

24 I will quote my colleague, Judge Kane, quote:  The
25 basic thing to remember as to sealing court records or cases

1    is strongly presumed to be the exception and not the rule.
2    The responsibility of the federal courts -- actually, all
3    courts -- is to respond to the exigencies of practical
4    problems, while at the same time basing the resolutions on
5    principles of law that transcend merely pragmatic judgment.
6    We are imbued as judges with the responsibility to enforce
7    the moral sense of mankind in which the values of
8    rationality in civilization are dominant.  We're not here to
9    make people feel good.  The judgment of the Court and the
10   rule of law have no efficacy unless they are public.  The
11   subordination of individual will and convenience of
12   institutional imperatives is required and secrecy of
13   whatever kind disserves the interest of public justice.
14   Unquote.
15           Under Local Rule 7.2A, it is a stated policy of
16   this Court that, quote:  Unless restricted by statute, rule
17   or civil procedure or Court order, the public shall have
18   access to all documents filed with the court and all court
19   proceedings.  Unquote.  Under the Local Rule documents can
20   only be restricted from public access or the interest to be
21   protected outweighs the presumption of public access and the
22   parties seeking restriction has identified a clearly defined
23   and serious injury that would result if access was not
24   restricted.
25           Here, I do not find that the presumption of public

1  access has been outweighed by any clearly defined serious
2  injury.  To the extent that plaintiff will not get paid back
3  because the defendant cannot get a job, that is the function
4  of the plaintiff's decision to seek redress in court by
5  filing a public complaint.  To the extent that the defendant
6  will be injured in his efforts to obtain employment in the
7  future, that is not a function of the allegations being
8  public; that is primarily a function of the acts to which he
9  committed, or is alleged to have committed, which caused the
10 lawsuit to be filed in the first place.
11          So the joint motion to restrict the complaint is
12 denied.
13          I'll ask plaintiff's counsel if they have
14 questions or seek any clarification with respect to the
15 ruling.
16          MR. ROTH:  David Roth, Your Honor, on behalf of
17 plaintiffs.  No, no, we don't.
18          THE COURT:  Okay, all right.  Defense counsel, the
19 same question.
20          MR. EICHNER:  Unless Ms. Hartfield has a question,
21 I have none.  Thank you for your ruling, Your Honor.
22          THE COURT:  All right.  We will be in recess at
23 this time.
24          (Whereupon, the within hearing was then in
25 conclusion at 2:46 p.m.)

                                                                    14

 1                    TRANSCRIBER'S CERTIFICATION
 2   I certify that the foregoing is a correct transcript to the
 3   best of my ability to hear and understand the audio
 4   recording and based on the quality of the audio recording
 5   from the above-entitled matter.
 6
 7   /s/ Dyann Labo                      December 14, 2020
 8   Signature of Transcriber                Date
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25